## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

DARRELL EDWARD KIRBY,      )
                                 )
        Plaintiff,             )
                                 )
v.                                )   Case No. 4:18-cv-00901-JHE
                                 )
COMMISSIONER OF SOCIAL SECURITY,   )
                                 )
        Defendant.       )

## MEMORANDUM OPINION[1]

Plaintiff Darrell Edward Kirby ("Kirby") seeks review, pursuant to 42 U.S.C. § 405(g), §

205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying his application for a period of disability and disability

insurance benefits ("DIB"). (Doc. 1). Kirby timely pursued and exhausted his administrative

remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has

carefully considered the record and, for the reasons stated below, the Commissioner's decision is

**AFFIRMED**.

### I. Factual and Procedural History

Kirby filed an application for a period of disability and DIB on April 20, 2015, alleging he

became unable to work beginning March 23, 2015. (Tr. 16, 166-69). The Agency initially denied

Kirby's application and Kirby requested a hearing, where he appeared on May 17, 2017. (Tr. 16,

96-122). After the hearing, the Administrative Law Judge ("ALJ") denied Kirby's claim on June

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

29, 2017.  (Tr. 13-40).  Kirby sought review by the Appeals Council, but it denied his request on April 13, 2018.  (Tr. 1-7).  On that date, the ALJ's decision became the final decision of the Commissioner.  On June 12, 2018, Kirby initiated this action. (*See* doc. 1).

Kirby was sixty-one on his hearing date.  (Tr. 109).  Kirby has a tenth-grade education and previous work as a forklift operator and truck driver.  (Tr. 109, 116).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show such work exists in the national economy in significant numbers.  *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Kirby met the insured status requirements of the Social Security Act through December 31, 2019 and had not engaged in substantial gainful activity after his alleged onset date of March 23, 2015.  (Tr. 19).  At Step Two, the ALJ found Kirby has the following severe impairments: diabetes mellitus, hypertension, obesity, anxiety disorder, depressive disorder, panic disorder, and borderline intellectual functioning.  (Tr. 19).  At Step Three, the ALJ found Kirby did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24).

Before proceeding to Step Four, the ALJ determined Kirby's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined that, through his date last insured ("DLI"), Kirby had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except with no driving; no unrestricted heights; no foot control operation, and no climbing.  He should have only occasional contact with the general public and be restricted to simple, repetitive, non-complex tasks.

(Tr. 27).

4

At Step Four, the ALJ determined that, through the DLI, Kirby was unable to perform any past relevant work. (Tr. 34). At Step Five, the ALJ found that, based on Kirby's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Kirby could perform. (Tr. 34-35). Therefore, the ALJ determined Kirby has not been under a disability and denied his claim. (Tr. 36).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Kirby raises six arguments in support of reversal and/or remand: (1) the ALJ inappropriately rejected opinion evidence, (doc. 10 at 19-24); (2) the decision was tainted by the ALJ's history of "substituting his opinion for the opinion of examining medical experts, (*id.* at 25-32); (3) the ALJ erred by failing to make a credibility finding regarding Kirby, (*id.* at 32-38); (4) the ALJ improperly failed to apply Grid Rules 201.02 and 202.02, which would have directed a finding of disabled, (*id.* at 38-40); (5) the ALJ failed to consider the side effects of Kirby's medications, (*id.* at 40-42); and (6) the ALJ's decision "was not based on substantial evidence," which is substantively an attack on the ALJ's reliance on vocational examiner ("VE") testimony, (*id.* at 42-45). Each is discussed separately below.

### A. The ALJ Did Not Err in Weighing Opinion Evidence

Kirby takes issue with the ALJ's decision to assign little weight to the opinion of Dr. James Barnett, Kirby's treating psychiatrist at Grandview Behavioral Health Center, and only some weight to the opinion of Dr. David Wilson, an examining psychologist at Gadsden Psychological Services. (Doc. 10 at 19). Kirby also appears to challenge the ALJ's assignment of little weight to the opinion of Ms. Giselle Sharp, Kirby's therapist at Quality of Life. (*Id.* at 19-20, 22). Kirby contends the ALJ erred when he discounted each of these and assigned good weight to the opinion of non-examining psychiatrist Dr. Robert Estock. (*Id.* at 23).

### 1. Dr. Barnett

As noted above, Dr. Barnett is one of Kirby's treating physicians. A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Dr. Barnett first saw Kirby on February 2, 2015.[4] (Tr. 335-36). At this visit, Kirby had appropriate appearance and attire, was oriented to time, place, and person, and displayed adequate insight, logical thoughts, and undisturbed memory. (Tr. 335). Dr. Barnett indicated Kirby's mood was mildly anxious and moderately depressed, but that Kirby had no hallucinations, delusions, obsessions, or suicidal/homicidal ideations. (*Id.*). Kirby reported panic attacks related to driving and that he "feels shaky." (Tr. 336). Dr. Barnett's impression at this visit was anxiety and major depressive disorder. (*Id.*). He prescribed Prozac and Klonopin. (*Id.*).

Kirby returned to Dr. Barnett on March 4, 2015. (Tr. 329). Treatment notes from that encounter indicate Kirby had no reports of full-blown panic attacks, but had been having difficulties driving, and felt he needed to be on short term disability. (*Id.*). However, Dr. Barnett found Kirby was oriented to person, place, and time and had good judgment, good insight, and logical thought processes. (*Id.*). Dr. Barnett's findings were otherwise unremarkable. (*Id.*). He again prescribed Prozac and Klonopin. (*Id.*).

Several weeks later, on March 23, 2015, Dr. Barnett saw Kirby again and indicated the same normal findings. (Tr. 328). Kirby reported continued fears of driving, including driving a forklift, due to concerns he would hurt someone else. (*Id.*). This time, Dr. Barnett indicated Kirby should be put on short-term disability and that he had filled out FMLA forms. (*Id.*).

On April 22, 2015, Kirby made another visit to Dr. Barnett. (Tr. 327). As with the previous visits, Dr. Barnett indicated Kirby's orientation, sleep patterns, insight, judgment, thought processes, thought content, appetite, energy/motivation, memory, and appearance were all

---

[4] Kirby had previously reported to Grandview Behavioral Health Center on January 19, 2015, but saw a different physician. (Tr. 332-34).

unremarkable. (*Id.*). Kirby was still uncomfortable driving by himself. (*Id.*). Dr. Barnett continued Kirby on Prozac and Klonopin. (*Id.*).

Dr. Barnett saw Kirby again on April 29, 2015. (Tr. 326). Kirby indicated he needed a release to return to work so he could receive short-term disability benefits. (*Id.*). Dr. Barnett indicated he provided a letter indicating Kirby could return to work on July 5, 2015. (*Id.*).

The record does not reflect Kirby visited Dr. Barnett again. On June 29, 2015, Dr. Barnett signed a letter stating Kirby was "disabled due to medical reasons" and thus "unable to return to work." (Tr. 337). And on October 14, 2015, Dr. Barnett completed a mental health source statement reflecting Kirby could understand, remember, and carry out short and simple instructions and maintain socially appropriate behavior, but could not: maintain attention, concentration, and/or pace for periods of at least two hours; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; or accept instructions and respond appropriately to criticism from supervisors. (Tr. 338). In this statement, Dr. Barnett indicated Kirby's limitations existed back to March 23, 2015, and that Kirby would be expected to miss 30 out of 30 days of work due to these limitations. (*Id.*). Dr. Barnett also stated Kirby's medications had sedation as a side effect. (*Id.*).

The ALJ assigned Dr. Barnett's June 2015 and October 2015 opinion little weight. (Tr. 31). His basis for doing so was that Dr. Barnett's underlying treatment records did not support the disabling limitations in those opinions. (*Id.*). Specifically, the ALJ found Dr. Barnett had not treated Kirby between April 2015—when Dr. Barnett stated Kirby could return to work in July 2015—and the later opinions indicating Kirby was disabled and could <u>not</u> return to work. (*Id.*). The ALJ also noted Kirby made no subsequent complaint of anxiety until January 2016 and did not receive a psychiatric diagnostic evaluation until May 2016. (*Id.*).

The inconsistencies between Dr. Barnett's treatment notes (which showed no particular limitations outside of Kirby's fears of driving), his previous opinion that Kirby could return to work, and his subsequent opinions that Kirby suffered from disabling limitations preventing him from returning to work—each of which the ALJ explicitly discussed—provided good cause to discount Dr. Barnett's June 2015 letter and October 2015 medical source statement. *See Phillips*, 357 F.3d at 1241; *Ravizee v. Comm'r*. Other than citing the treating physician rule and stating in conclusory terms that the ALJ failed to follow it, (doc. 10 at 22-24), Kirby does not indicate how the ALJ erred under these circumstances. The undersigned concludes the ALJ did not misapply the treating physical rule or other controlling law in discounting Dr. Barnett's opinions.

### 2. Ms. Sharp

Ms. Sharp was not a treating physician, so the treating physician rule does not apply to her. In fact, she is not a physician at all, and her opinion is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1502(a), 404.1527(a)(1). The regulations indicate that an ALJ considers opinions from such sources, 20 C.F.R. § 404.1527(f)(1), and should generally explain the weight given to them, 20 C.F.R. § 404.1527(f)(2), but they are not entitled to controlling weight over the opinions of other acceptable medical sources. *See Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 783 (11th Cir. 2016) (finding counselors' medical source statements were not entitled to controlling weight); *Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 901 (11th Cir. 2014) (same).

Ms. Sharp provided letters and medical source statements in 2016 and 2017. On September 28, 2016, Ms. Sharp stated Kirby was under treatment for Generalized Anxiety Disorder, and, in her opinion "based on observation and assessment of Mr. Kirby during several months of treatment," Kirby did not have the ability to carry out daily work activities. (Tr. 340). Ms. Sharp also described side effects from two of Kirby's medications: "Prozac, which has the potential to impair judgment, thinking, and motor skills, and Vistaril, which may produce drowsiness,

impairment of mental/physical abilities, headache, and hallucinations." (*Id.*). A mental health source statement accompanying this indicated Kirby could perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and maintain socially appropriate behavior, but could not: understand, remember, and carry out very short and simple instructions; maintain attention, concentration, and/or pace for periods of at least two hours; or adjust to routine and infrequent work changes.[5] (Tr. 339). Ms. Sharp indicated Kirby would be off-task for 35% of an 8-hour day and would miss 5-7 days in a 30-day period. (Tr. 339). Ms. Sharp's letter from March 22, 2017, tracks her previous letter, although it omits Vistaril and its side effects and states Kirby is being treated for Panic Disorder. (Tr. 475). Her source statement indicates Kirby can understand, remember, and carry out very short and simple instructions (something he could not do in her previous estimation), would be off-task 65% of the time in an 8-hour day, and miss 15 days of work in a 30-day period. (Tr. 476). Her final letter, dated April 28, 2017, states Kirby is being treated for Generalized Anxiety Disorder, and that his anxiety "has become severe over the last six months due to financial and medical stressors." (Tr. 615). This letter adds Vistiril and its side effects back in. (*Id.*).

The only treatment notes from Ms. Sharp in the record come from a May 17, 2016 psychiatric diagnostic evaluation. (Tr. 558-62). In that evaluation, Kirby reported struggles with panic attacks and anxiety dating back ten years, but also that he had been able to control them. (Tr. 558). Kirby indicated that his anxiety became worse after November 2014. (*Id.*). Kirby reported extreme anxiety when out in public, difficulty driving long distances from his home, and

---

[5] Ms. Sharp did not answer the form's questions asking if Kirby could interact with supervisors or coworkers or sustain an ordinary routine without special supervision. (Tr. 339). Ms. Sharp also did not answer a question asking if Kirby's limitations existed back to March 23, 2015. (*Id.*).

worries over when his next panic attack would occur. (Tr. 559). A mental status evaluation indicated Kirby's mood was anxious, his thought content depressive, his insight partial, and his cognition impaired as to attention and concentration. (Tr. 561). However, Kirby's thought process was logical, his perception and judgment were within normal limits, and his intelligence estimate was average. (*Id.*). Furthermore, he maintained good eye contact and he was cooperative, including freely offering information about his history. (*Id.*). Ms. Sharp's treatment plan consisted of ongoing counselling sessions, with Kirby returning on June 14, 2016 for follow-up. (Tr. 562).

The ALJ discussed Ms. Sharp's opinions, noting that Kirby's treating medical records did not support the limitations Ms. Sharp indicated. (Tr. 30-31). The ALJ had previously recounted Kirby's other treatment at Quality of Life, which did not contain reports of disabling mental limitations and, in any event, indicated in October 2016 that Kirby's anxiety "got better with hydroxyzine." (Tr. 30-31, 576). Additionally, the ALJ noted the record did not contain any treatment records that would support Ms. Sharp's statements that her evaluation was "based on observation and assessment of Mr. Kirby during several months of treatment." (Tr. 30-32). Based on the absence of supporting treatment records,[6] the ALJ accorded Ms. Sharp's opinion little weight. (Tr. 31-32). This was a proper basis for doing so. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). The ALJ did not err in his evaluation of Ms. Sharp's opinions.

### 3. Dr. Wilson

---

[6] The ALJ noted Kirby's counsel had stated at the hearing that no additional treatment records from Ms. Sharp or Quality of Life were outstanding. (Tr. 31-32, 100-101). Additionally, the ALJ left the evidentiary record open after the hearing, (tr. 120), and nothing related to Ms. Sharp's treatment was apparently submitted.

Dr. Wilson was also not a treating physician. Instead, he was a one-time examiner. As such, his opinion was not entitled to any particular weight. *See Crawford*, 363 F.3d at 1160; *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877-78 (11th Cir. 2013).

Dr. Wilson examined Kirby on May 2, 2017. (Tr. 478). Dr. Wilson performed a number of tests, ultimately concluding Kirby had Major Depressive Disorder, Panic Disorder with Agoraphobia, and Borderline Intellectual Functioning. (Tr. 482). Dr. Wilson's mental health source statement indicated Kirby could not: understand, remember, and carry out short and simple instructions; maintain socially appropriate behavior; maintain attention, concentration, and/or pace for periods of at least two hours; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; or accept instructions and respond appropriately to criticism from supervisors. (Tr. 484). Dr. Wilson stated Kirby would be off-task 80% of the time during an 8-hour workday and would miss 25 out of 30 workdays. (*Id.*). Dr. Wilson indicated Kirby's limitations dated back to March 23, 2015. (*Id.*).

The ALJ assigned "some weight" to Dr. Wilson's opinion, but only as to Kirby's condition at the time Dr. Wilson evaluated him. (Tr. 32). To support this, the ALJ cited treatment records from Dr. James A. McCain from April 10, 2017—less than a month before Dr. Wilson's evaluation—in which Kirby was not reported as displaying anxiety and depression.[7] (Tr. 32, 601). Further, during Kirby's April 2017 hospitalization, his psychiatric examination was "cooperative with normal mood, affect, and cognition," and "no anxiety, no depression, no mania." (Tr. 32, 648, 658). Because "it is unlikely that physicians who treated [Kirby] during his April 2017

---

[7] As the ALJ noted, Kirby was described as not oriented as to person, place, situation, or time at this encounter, but was experiencing nausea and vomiting. (Tr. 601).

hospitalization would have failed to note disabling mental impairments and limitations" but diagnosed none, as well as the reasons cited in rejecting Ms. Sharp's opinions, the ALJ concluded Dr. Wilson's opinion did not support limitations over a 12-month period. (Tr. 32).

Kirby points to no specific error in this finding. Because the ALJ adequately supported his finding with substantial evidence, the undersigned concludes the ALJ appropriately weighed Dr. Wilson's opinion.

### 4. Dr. Estock

The culmination of Kirby's argument is that the ALJ erred by assigning good weight to the opinion of Dr. Estock. (Doc. 19 at 24). Dr. Estock provided a consultative report on April 29, 2015, assigning limitations broadly consistent with the ALJ's RFC and ultimately concluding that Kirby was not disabled. (Tr. 127-36). The ALJ concluded it was "consistent with the record as it existed at the time of his opinion." (Tr. 34).

Kirby cites *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988), for the proposition that "[t]he opinions of non-examining, reviewing physicians, when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." (Doc. 10 at 23). But, as the Commissioner notes, the ALJ did not rely solely on Dr. Estock's opinion; instead, as stated above, the ALJ relied on the record as a whole. (Doc. 12 at 13-14). And since *Lamb* predates the regulations in effect at the time of the ALJ's decision, it is not dispositive. Instead, the ALJ may properly rely on a non-examining source if it is supported by the evidence in the record, *see* 20 C.F.R. § 404.1513a(b)—and if other physicians' opinions have been appropriately discounted, *see Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012). Because Dr. Estock's opinion was consistent with the record—and the opinions of Dr. Barnett, Ms. Sharp, and Dr. Wilson were not, at least as to the time period at issue—the ALJ did not err in assigning it good weight.

**B. Kirby Has Not Demonstrated Bias by the ALJ**

Kirby's next argument is that the ALJ in this case is biased and has "[f]or over 15 years . . . denied benefits by substituting his opinion for the opinion of examining medical experts." (Doc. 10 at 25). He spends the next seven pages of his brief citing cases in which the ALJ has been reversed. (Doc. 10 at 25-32). What he does <u>not</u> do is connect any of those citations to the facts of this case, aside from generally arguing that the ALJ substituted his opinion for experts (the argument rejected above).

The court starts from the presumption that an ALJ is unbiased and acts with honesty and integrity. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification," and the burden to do so is on the party asserting bias." *McClure*, 456 U.S. at 195. Specifically, the party must show convincing evidence that "a risk of actual bias or prejudgment" is present. *Withrow*, 421 U.S. at 47. "[J]udicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses ... [which] neither (1) rel[y] upon knowledge acquired outside [the] proceedings nor (2) display[ ] deep-seated and unequivocal antagonism that would render fair judgment impossible," are inadequate to require disqualification. *Liteky v. United States*, 510 U.S. 540, 556 (1994).

Kirby's citations to reversed decisions are immaterial to his accusation of bias. *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 700, 703 (11th Cir. 2018) (noting an "ALJ's number of reversals in district court" is a "general assumption that cannot survive the presumption

of non-bias").[8] Kirby has not met his burden to show why the ALJ was biased <u>in this specific case</u>. *See id.* As such, he has not demonstrated error by the ALJ.

## C. The ALJ Appropriately Assessed Kirby's Subjective Reports[9]

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

---

[8] *Contreras-Zambrano* is one of a number of cases in which the Eleventh Circuit has rejected similar arguments by Kirby's counsel. *See also, e.g., Putman v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929, 936 (11th Cir. 2017). Kirby cites no case, in-circuit or otherwise, where this argument has actually prevailed.

[9] Kirby titles this section of his brief "ALJ Munford Failed to Make a Credibility Finding on Claimant — Any Implied Credibility Finding Was Not Supported by Substantial Evidence." (Doc. 10 at 32). To the extent Kirby argues the ALJ did not make an adequate finding because he did not use the word "credibility," SSR 16-3p has eliminated the use of the term. In fact, Kirby's counsel has argued to the Eleventh Circuit that the use of the word "credibility" post-SSR-16-3p merits reversal and remand. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (declining to apply SSR 16-3p retroactively).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2016 WL 1119029 at * 3-10. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p, 2016 WL 1119029 at * 3-10. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

At the hearing, Kirby testified his diabetes caused him to use the restroom 14-15 times per day and 5-6 times at night. (Tr. 105). He also indicated diabetes caused him nerve pain in his legs and feet, shooting up unpredictably. (*Id.*). Kirby testified his medications cause him dizziness and that those medications advised him not to drive; Kirby's anxiety medication "makes [him] sleep a lot." (Tr. 106). Kirby testified that he lies down or sleeps "six to seven times" per day. (Tr. 106-07).[10] He indicated his frequent trips to the bathroom interfered with his sleeping. (Tr. 107).

_____

[10] Kirby's brief contains what are purported to be excerpts of his testimony. (Doc. 10 at 35-36). Although presented as quotations, they are in fact paraphrases of the hearing transcript (as are other "quotations" in the brief). While most of the differences are stylistic rather than substantive, Kirby's brief contains the following "quote":

> RMA: Okay, well between the hours of 8 a.m. and 5 p.m. how much of your time is spent either lying down or sleeping?

When his blood sugar gets too high, Kirby said he gets jittery, nervous, and sweaty. (*Id.*). Kirby stated he was only able to stand in one spot for five to ten minutes. (*Id.*). Kirby indicated he had to wear house shoes because of the swelling and sweating of his feet. (Tr. 108). And, asked about whether he could watch a two-hour movie, Kirby stated his "mind wonders off." (*Id.*).[11]

The ALJ stated he had "reviewed the claimant's subjective complaints in accordance with the guidelines provided by Social Security Ruling 16-3p . . . [and] taken into consideration the controlling case law in the Eleventh Circuit regarding the standard used to assess subjective complaints of pain and other subjective symptoms." (Tr. 27). He then recapitulated the Eleventh Circuit's pain standard. (*Id.*). Following that, the ALJ summarized Kirby's testimony of subjective symptoms. (Tr. 28). After discussing Kirby's complaints of mental symptoms and contrasting them with the record evidence, (tr. 28-32), the ALJ proceeded to Kirby's diabetes-related complaints as set out above. (Tr. 32). Contrary to Kirby's contention, the ALJ's discussion explicitly compared Kirby's subjective reports to the record evidence, eventually indicating that Kirby's "longitudinal treating medical records do not indicate that [his] diabetes or hypertension have caused disabling symptoms or limitations." (Tr. 33).

---

JK: Like I said, I don't do many activities. Six or seven hours a day.

(Doc. 10 at 36). The <u>actual</u> quote from the record transcript—i.e., the evidence before the court—is:

Q: Okay. Well, okay, then between the hours of 8 a.m. and 5 p.m. how much of your time is spend [sic] laying down or sleeping?

A: Like I said, I don't do too much activities. <u>I guess about six or seven times, six or seven times that'll be</u>.

(Tr. 106-07) (emphasis added). Converting Kirby's testimony from the ambiguous "six or seven times" to the definite "six or seven hours a day" presents counsel's interpretation as a direct quote.

[11] Kirby's brief inaccurately quotes his lengthier, indirect answer as a simple, direct "No," (*compare* doc. 10 at 36 *with* tr. 108)—another substantive modification of Kirby's testimony presented as a direct quote.

The ALJ discussed each individual symptom Kirby identifies above: frequent urination, diabetic neuropathy, need to rest during the day, insomnia, inability to stand, and foot swelling. To the extent these symptoms derive from Kirby's diabetes or hypertension, the ALJ noted Kirby's Quality of Life records showed in May 2016 that both conditions were stable with no associated symptoms. (Tr. 32, 551). Kirby's foot screen was negative[12] and his sensory exam was normal. (Tr. 32, 555). In October 2016, Kirby's diabetes was described as improving and his hypertension was stable, with Kirby compliant with diabetes medication. (Tr. 32, 576). The only complications from Kirby's diabetes were heartburn and slow-healing wounds. (Tr. 576). Kirby also indicated no change to his sleep patterns. (Tr. 578). In December 2016, Kirby's diabetes continued to improve, with negative findings for burning of extremities, nocturia, and polydipsia. (Tr. 32, 583). In March 2017, Kirby's diabetes was still reported as improving and managed with diet, medication, and insulin; Kirby was negative for frequent urination. (Tr. 32, 590, 593). His diabetes was getting worse in April 2017, but his only symptoms were frequent infections and heartburn. (Tr. 32, 597). Although Kirby's monofilament exam was abnormal, with weakness, deformity, pre-ulcer, or callus, there was no indication of debilitating pain and no edema. (Tr. 601). The ALJ noted Kirby's pain scores were generally 0/10 from September 2015 to March 2017, which conflicted with Kirby's reports of chronic pain. (Tr. 32, 454-55, 470, 544, 556). Higher pain scores of in August 2016 and April 2017 were attributable to other conditions— sinusitis in August 2016 and esophagitis in April 2017. (Tr. 32-33). The ALJ also found no reports of medication side effects in the record. (Tr. 33).

---

[12] Kirby's diabetic foot screen actually indicates both a normal finding and a Risk Level 1 finding, but the Risk Level 1 finding indicated "no weakness, deformity, callus, pre-ulcer or H/O ulceration." (Tr. 555). The normal diabetic foot screen was described as a continuation. (*Id.*).

The ALJ's evaluation of Kirby's subjective reports was supported by substantial evidence, and he articulated "explicit and adequate reasons" for discounting Kirby's reports. *Holt*, 921 F.2d at 1223. Other than (inaccurately) suggesting the ALJ failed to articulate reasons for discounting his testimony, Kirby does not identify any problem with the ALJ's handling of his subjective complaints. Reversal is not warranted on this ground.

## D. The ALJ Was Not Required to Apply Grid Rules 201.02 and 202.02

Kirby's next point of contention is that the ALJ inappropriately failed to find him disabled at the "grids."[13] (Doc. 10 at 28-40). Specifically, Kirby argues he should have been found disabled because he is a person of advanced age (i.e., over 55), with limited or less education, skilled or semi-skilled work with nontransferable skills, and limitations reducing him to a full range of light work or sedentary work. (Doc. 10 at 39). As stated above, though, the ALJ limited Kirby to medium work with some restrictions, so neither rule 201.02 (applicable to sedentary work) or 202.02 (applicable to light work) square with the facts of this case. (Tr. 27). Accordingly, the ALJ examined whether grid rules 203.04 and 203.12, both of which apply to individuals who can perform the full range of medium work (and which would have directed a finding of "not disabled"), would apply. (Tr. 35). But because Kirby had limitations on his ability to perform medium work, the grids are not dispositive of his disability. *See* 20 C.F.R. §§ 404.1569, 404.1569a(c), (d); 20 C.F.R. § 404.00, Subpart P, Appendix 2, §§ 200.00(a), (b), (c), (d); *Phillips*, 357 F.3d at 1242 ("[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills."). Accordingly, the ALJ

---

[13] The "grids" are more formally known as the Medical Vocational Guidelines, and are found in 20 C.F.R. § 404.00, Subpart P, Appendix 2.

did not err by consulting a VE rather than finding Kirby disabled at the grids. To the extent Kirby challenges the ALJ's hypothetical to the VE, that argument is discussed further below.

### E. The ALJ Appropriately Considered the Side Effects of Kirby's Medication

Kirby's entire argument is, in one sentence, "ALJ Munford held that 'He [Dr. Barrett] reported that sedation was a side effect of the claimant's medications.'" (Doc. 10 at 40). The remainder of Kirby's briefing regarding this issue is an extended excerpt from *Waters v. Berryhill*, 2017 WL 694243 (S.D. Ga. 2017), an unpublished district court case in which a court found an ALJ's failure to evaluate the side effects of medication resulted in reversal and remand. (*Id.* at 40-42). Kirby does not connect that case to this one, but in any event the ALJ clearly <u>did</u> discuss the side effects of Kirby's medication, specifically in the context of Ms. Sharp's report of Prozac's side effects of impaired judgment, thinking, and motor skills, and Vistaril's side effects of drowsiness, impairment of mental/physical abilities, headache, and hallucinations.[14] (Tr. 30-31). The ALJ found "the claimant's longitudinal treating medical records do not establish that his medications have caused such side effects." (Tr. 31). Kirby offers no reason to conclude that sedation is meaningfully different from the side effects the ALJ dismissed as unsupported by the medical record, nor does the record reveal reports of such side effects to physicians. This is substantial evidence supporting the ALJ's determination. *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). It was Kirby's burden at the administrative level to demonstrate that side effects of his medication made him unable to work. *See Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 367 (11th Cir. 2010). Having failed to do so, he cannot now claim the ALJ erred.

### F. The ALJ's Question to the Vocational Examiner Was Not Erroneous

------------------

[14] Kirby does not specifically raise this, but the ALJ also stated the record did not reflect Kirby had complained of dizziness and sleepiness, the two side effects he testified to at the hearing. (Tr. 33).

Kirby's final argument is that the ALJ erred when he "relied on VE testimony, which was not based on a correct or full statement of Claimant's limitations and impairments." (Doc. 10 at 42). The ALJ asked:

> Assume that I found from all the evidence that we have an individual of advanced age with a limited education who can perform let's say medium work, except with the following limitations. I'm going to say no driving. No unrestricted heights. No foot control operation. I'll say no climbing also. He should have only occasional contact with the general public and should be restricted to simple, repetitive, noncomplex tasks. We'll set aside for a moment his past relevant work, Ms. Stricklin, and tell me whether or not in your opinion if there would be any medium work opportunities that you believe Mr. Kirby could perform, please.

(Tr. 116). The VE then listed several potential jobs a hypothetical person with those limitations could perform. (Tr. 116-117).

In order for a VE's testimony "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Although he generally states the ALJ's question "did not fully state plaintiff's impairments and limitations," (doc. 10 at 43), Kirby does not indicate what limitations the ALJ erred by failing to include. In any event, the ALJ was not required to include limitations based on Kirby's subjective complaints when those complaints were not supported by the record, as discussed above. *Crawford*, 363 F.3d at 1161. Further, the ALJ stated he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in accordance with the regulations, (tr. 27), which indicates he <u>did</u> incorporate those symptoms into the RFC. *See Nichols v. Comm'r of Soc. Sec.*, 679 F. App'x 792, 797 (11th Cir. 2017) (ALJ's explicit statements that he considered the record and impairments in combination supported that he had did so). Accordingly, the ALJ's RFC finding, contained in his question to the VE, was supported by substantial evidence.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Kirby's claim for a period of disability and DIB is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**.  A separate order will be entered.

DONE this 30th day of September, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE